Matthew M. HENDRICK, Plaintiff,

v.

AVIS RENT A CAR SYSTEM, INC., General Motors Corporation, and New United Motor Manufacturing, Inc., Defendant.

AVIS RENT A CAR SYSTEM, INC., Defendant & Third Party Plaintiff,

v.

Andrea E. MacMILLAN, Third Party Defendant.

No. 93–CV–6450T.

United States District Court, W.D. New York.

Sept. 19, 1996.

Thomas R. Monks, Rochester, NY, Kevin S. Hannon, The Law Firm of Kevin S. Hannon, Denver, CO, Kieron F. Quinn, Towson, MD, for Matthew M. Hendrick.

Henry R. Ippolito, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for Avis Rent a Car System, Inc.

Debra Martin, Martin & Iati, Rochester, NY, for Andrea E. MacMillan.

Neil A. Goldberg, Saperston & Day, P.C., Buffalo, NY, for General Motors Corporation, New United Motor Manufacturing, Inc.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

By Order dated November 14, 1995, the Honorable Michael A. Telesca, referred this diversity case to the undersigned to determine any non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).

Before the Court are defendant GM's cross-motion to compel disclosure of (1) redacted portions of a "notebook" kept by plaintiff's father and (2) documents reflecting communications between plaintiff's mother and plaintiff's counsel along with attorneys notes and memoranda concerning those communications.

## BACKGROUND

The underlying cause of action originates from the unfortunate events of October 19, 1991. Plaintiff, Matthew Hendrick was a passenger in a Geo Prizm automobile driven by his mother, Andrea MacMillan. As the vehicle traveled along Route 96 in Romulus, New York, the car left the road and collided with a utility pole. Plaintiff, as a result of the collision, suffered serious injury and is now a quadriplegic.

Shortly after the accident Plaintiff's father began recording notes of his daily activities related to the accident. Plaintiff has disclosed the seventy-seven page diary to the defendant excepting nine redactions. Plaintiff argues that the redacted entries document privileged attorney-client communications. Similarly, Plaintiff's mother wrote letters and phoned Plaintiff's attorney on several occasions with information relevant to Plaintiff's case. Plaintiff argues that the letters and intra office memoranda concerning the phone calls are also privileged attorney-client communications. Plaintiff also contends that the intra office memoranda are privileged under the attorney work product doctrine. The parties agreed to submit the material in question to the Court for *in camera* inspection and review.

## DISCUSSION

### A. The Attorney Client Privilege in General

■ Pursuant to Rule 501 of the Federal Rules of Evidence, substantive questions of privilege in this personal injury action will be governed by New York State law. *See Application of American Tobacco Co.,* 880 F.2d 1520, 1527 (2d Cir.1989) (in a diversity case the existence of a privilege is to be determined by reference to state law); *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470–471 (S.D.N.Y.1993) (under Fed.R.Evid. 501, where action involves state law claims and defenses, it is state law which defines the elements of the attorney-client privilege). New York State recognizes the attorney client privilege via statute.[1] The privilege "is intended to foster openness between counsel and client so that legal problems can be thoroughly and accurately analyzed." *Matter of Vanderbilt,* 57 N.Y.2d 66, 76, 453 N.Y.S.2d 662, 439 N.E.2d 378 (1982). *Priest v. Hennessy,* 51 N.Y.2d 62, 67–68, 431 N.Y.S.2d 511, 409 N.E.2d 983 (1980) (privilege exists "to ensure that one seeking legal advice will be able to confide fully and freely in his attorney, secure in the knowledge that his confidences will not later be exposed to

---

1. Section 4503 of New York's Civil Practice Law and Rules provides, in relevant part: "Unless the client waives the privilege, an attorney or his employee, or any other person who obtains without knowledge of the client evidence of a confidential communication made between an attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication [in any proceeding] ..." N.Y. CPLR § 4503(a).

public view to his embarrassment or legal detriment.").

■ Here the communications are not directly between plaintiff and his attorney. Rather, the majority of communications at issue are between counsel and plaintiff's parents. New York courts have recognized that the attorney-client privilege may attach to communications between a client's agent and an attorney.

> As a general rule, a communication by a client to his attorney by any form of agency employed or set in motion by the client is within the privilege. Accordingly, communications to any person whose intervention is necessary to secure and facilitate the communication between an attorney and client are privileged, [such] as communications through an interpreter, a messenger or any other intermediary.

*Mileski v. Locker*, 14 Misc.2d 252, 255, 178 N.Y.S.2d 911 (N.Y.Sup.1958). *See People v. Osorio*, 75 N.Y.2d 80, 550 N.Y.S.2d 612, 549 N.E.2d 1183 (1989) (communications made to counsel through an agent of either attorney or client to facilitate communication generally held privileged); *Stroh v. General Motors Corp.*, 213 A.D.2d 267, 623 N.Y.S.2d 873 (1st Dept.1995) (presence of daughter of elderly client during conversations with attorney does not vitiate privilege).

■ Here plaintiff, a college student, was involved in a catastrophic, if not life threatening, automobile accident. The accident rendered plaintiff a quadriplegic with complete and permanent paralysis. Within weeks after the accident, plaintiff's parents began looking for legal counsel to represent their son. According to plaintiff's father, he undertook this task because "Matt's physical and emotional condition was very unstable, and he was not able to do so [himself]." *See* Deposition of Michael Hendrick, at pages 459–460, annexed as exhibit "G" to Defendant's Notice of Motion. (Docket # 28). Plaintiff was aware that his parents were seeking counsel for him. *Id.* Plaintiff's mother also confirmed that her involvement with seeking counsel for her son was because "Matt was so sick and he was not able to do that physically." *Id.* at exhibit "G" at page 714. Plaintiff's mother testified that her ini-

tial conversations with counsel were "exclusively" for the purpose of finding an attorney for her son. *Id.* at 715.

Given the foregoing, the Court has little difficulty in finding that plaintiff's parents were acting as his agents in locating legal counsel for him in connection with the automobile accident which rendered him a quadriplegic. The record before me is clear that plaintiff's injuries and the comprehensive medical intervention necessary to treat those injuries inhibited plaintiff from independently seeking legal counsel. It is both logical and reasonable that his parents would act as his agent in this important task. Having determined that the parents' communications with counsel may be protected by the attorney-client privilege, I now turn to the specific issues of whether the documents currently in dispute are, in fact, protected from disclosure.

### B. *Application of the Privilege to the Disputed Documents.*

■ 1. *Michael Hendrick's Notebook:* Shortly after the accident, plaintiff's father, Michael Hendrick, began keeping a notebook as to facts and efforts he made with respect to the accident and the injuries sustained by his son. Of the notebook's 77 pages, plaintiff's counsel made nine limited redactions. According to plaintiff, the redactions reflect communications between plaintiff's father and counsel while his father was acting as his agent. The remainder of the notebook has been disclosed and provided to defense counsel. I have reviewed the nine redactions *in camera* and agree that they contain snippets of communications between Michael Hendrick and counsel regarding plaintiff's legal matters. The majority of the redactions concern efforts to obtain insurance related forms. One redaction is more substantive (notebook pages 42–43) and concerns tasks to prepare for possible litigation. I believe all of the redactions reflect items or conduct that Michael Hendrick was performing as his son's agent and that the necessity for such agency was the serious injuries plaintiff suffered. Had the notebook been authored by plaintiff, the redacted portions would be privileged as reflecting conversations between

attorney and client as to legal matters and advice. No dilution of the privilege should result simply because plaintiff's injuries and paralysis required his father to act as his agent for the purpose of furthering plaintiff's legal interests. *See Moore v. Tri–City Hosp. Authority,* 118 F.R.D. 646 (N.D.Ga.1988) (diary entries reflecting communications between attorney and client protected as privileged). *See also In the Matter of Pretino,* 150 Misc.2d 371, 567 N.Y.S.2d 1009 (Surr.Ct.1991) (diary protected by attorney client-privilege).

2. *Andrea MacMillan's Communications with Counsel:* Plaintiff's mother, Andrea MacMillan, also had communications with her son's lawyer that are subject to dispute. Based on the materials submitted for *in camera* inspection, these communications included letters written by Mrs. MacMillan to her son's lawyer and meetings or phone conversations between Mrs. MacMillan and counsel (or employees of counsel) that resulted in either handwritten notes or typed memoranda to the file.[2]

■ As to the letters from Mrs. MacMillan to counsel, I find their scope and subject matter to be within the attorney-client privilege. The letters generally concern insurance matters, a topic of obvious concern to plaintiff. It is clear from the content of the letters that Mrs. MacMillan was acting on her son's behalf, seeking the assistance of counsel in trying to sort out and coordinate a myriad of issues related to medical benefits, rehabilitation benefits, school insurance and automobile insurance. These are precisely the kinds of legal issues for which injured parties routinely seek the assistance and advice of counsel. Had the letters been written directly by plaintiff to his lawyer, there

would be no doubt as to the applicability of the attorney-client privilege. The fact that a mother writes the letters because her son lies paralyzed certainly should not require a different result.

For the most part, the notes of counsel, phone message slips and memoranda to the file created as a result of Mrs. MacMillan's contact with her son's lawyer also concern sorting out her son's insurance coverage and coordinating contact between plaintiff and counsel. For the same reasons as set forth above, I find those memoranda privileged as being made by Mrs. MacMillan as her son's agent.

■ Some of the information contained in the documents, particularly those documents created in December 1991, concern accident investigation and obtaining relevant police reports. Mrs. MacMillan's role as agent for her son in helping coordinate his post-accident legal affairs is complicated by the fact that she also was the driver of the rental car that was involved in the accident that injured her son. Thus, in communicating with counsel, Mrs. MacMillan's role as agent for her son's legal affairs and her role as a witness to the accident are easily blurred. Information imparted by Mrs. MacMillan may have been intended by her to be divulged to counsel in her role as her son's agent, but nevertheless may also be useful to counsel as providing independent factual support for his client's personal injury claim. It is the latter purpose (i.e. as a participant in or witness to the accident) that makes Mrs. MacMillan's contact with her son's attorney problematic.[3]

■ Nevertheless, even assuming that portions of the disputed documents reflect Mrs. MacMillans' role as a witness and not as

---

**2.** Also submitted for *in camera* inspection were phone message slips reflecting occasions when Mrs. MacMillan apparently was unable to reach counsel and left a message. The message slips were obviously authored by an employee of counsel and, although sometimes cryptic, concern the legal affairs of her son.

**3.** The notes and memorandums confirming the substance of such contact would be privileged had the conversations been directly between plaintiff and his lawyer. Because Mrs. MacMillan was acting as her son's agent, I believe the

documents should retain their privileged character. However, it must be noted that while the documents themselves may be privileged communications, the underlying *facts* would not be privileged. The attorney-client privilege "applies only to *confidential communications* with counsel, it does not immunize the underlying factual information ... from disclosure to an adversary." *Niesig v. Team I,* 76 N.Y.2d 363, 372, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990) (emphasis in original). *Miranda v. Miranda,* 184 A.D.2d 286, 584 N.Y.S.2d 818 (1st Dept.1992) (same).

her son's legal affairs agent, disclosure of the documents does not automatically follow. "A lawyer talks to a witness to ascertain what, if any, information the witness may have relevant to his theory of the case, and to explore the witness' knowledge, memory and opinion—frequently in light of information counsel may have developed from other sources. This is part of an attorney's so-called work product." *Niesig v. Team I,* 76 N.Y.2d at 372, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (*quoting International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 41 (2d Cir. 1975). To obtain disclosure of those portions of documents reflecting Mrs. MacMillan's communications with counsel that could be construed as "witness information", GM would have to demonstrate "substantial need" for the documents and show that it is unable to without "undue hardship" to obtain the substantial equivalent of the documents by other means. *Fed.R.Civ.Proc.* 26(b)(3). Perhaps because Mrs. MacMillan has already been deposed by defendants for three days, no such showing has been made here. Accordingly, with one exception [4], plaintiff shall not be required to disclose to GM the letters, notes or other documents reflecting Mrs. MacMillan's communications with plaintiff's counsel.

## CONCLUSION

For the foregoing reasons, and with the exception set forth above, defendant General Motor's cross-motion for disclosure of the redacted portions of the notebook prepared by Michael Hendrick and for disclosure of communications between Andrea MacMillan and plaintiff's counsel is **denied.** The Clerk shall file plaintiff's *in camera* submission under seal.

---

4. Included with the *in camera* submission is a copy of an October 6, 1991 handwritten note to Mrs. MacMillan from the Seneca County Sheriff's Department. This document is not a communication to counsel and is not protected by the work product privilege. Accordingly, it should be disclosed.