CONSTRUCTION INDUSTRY SERVICES CORP., et al., Plaintiffs,

v.

The HANOVER INSURANCE CO., et al., Defendants.

**No. CV 00–1438 ADS WDW.**

United States District Court, E.D. New York.

Decided Dec. 6, 2001.

Adhered to on Reconsideration Jan. 25, 2002.

Martin S. Siegel, Brown Rudnick Berlack Israels LLP, New York City, for plaintiffs.

Richard T. Lunger, Rivkin, Radler & Kremer, Uniondale, NY, for defendants.

WALL, United States Magistrate Judge.

Pending before the court is a motion by the defendants seeking to compel the production of documents that the plaintiffs, Construction Industry Services Corp., et al. ("CISCO"), claim are privileged. By order dated October 25, 2001, the plaintiffs were ordered to produce, for *in camera* review, the documents that they claim are protected from disclosure by attorney-client or work

product privilege. After the order was issued, the plaintiffs produced some documents previously in dispute (e.g., the Whynot documents), and, on November 6, submitted those documents for which privilege is still invoked for this court's review. On November 27, the plaintiffs submitted six additional documents, with a letter explaining that they had been inadvertently omitted from the earlier submission.

The plaintiffs appear to make two arguments in regard to the documents. First, they claim that they are protected by the attorney client and/or work product privileges. They also claim, as a corollary argument, that those privileges have not been waived pursuant to Fed.R.Civ.P. 26(a)(2)(B) in regard to documents created or reviewed by Samuel Liebgold, a designated expert in this action, because Mr. Liebgold acted as both a consultant and an expert, and the disputed documents relate only to his role as consultant.

The role played by Samuel Liebgold is the crux of the inquiry on this motion. The documents reveal that Liebgold, an outside accountant for CISCO, played a significant role in evaluating the strength of the claims against the defendants in this lawsuit and in advising CISCO about the litigation. Liebgold's advice extended even to the choice of attorneys to conduct the litigation, but the documents contain little or no accounting advice. It is unclear from the record before the court why CISCO relied so heavily on Liebgold for advice outside the realm of accounting expertise. It is also unclear what relation Liebgold had to the various attorneys consulted by CISCO before and during the litigation. As explained in more detail *infra*, although some set of facts may exist under which the attorney client privilege may have extended to Liebgold, the failure of the plaintiffs to provide an explanatory affidavit from Liebgold and from a representative of CISCO [1] or to otherwise establish a sufficient record to explain Liebgold's role and to support the application of the privileges requires a finding that a number of documents are not

protected by the attorney client privilege. For the reasons set forth below, the motion is granted in part and denied in part.

## A.) *Application of the Attorney–Client Privilege:*

Pursuant to Rule 501 of the Federal Rules of Evidence, substantive questions of privilege in this diversity action are governed by New York State law. *See Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 638 (E.D.N.Y.1997); *see also Hendrick v. Avis Rent A Car Sys.*, 944 F.Supp. 187, 188 (W.D.N.Y.1996) (citing *Application of American Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir.1989)). Section 4503(a) of New York's Civil Practice Law and Rules provides, in relevant part, that "[u]nless the client waives the privilege, an attorney or his employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication...." At the core of the privilege is the existence of "a confidential communication between an attorney or his employee and the client in the course of professional employment." *Id.* As explained in more detail *infra*, this element is lacking in regard to several of the documents at issue, and the privilege was waived as to other documents. Several documents are protected from disclosure by the privilege.

### 1.) Documents that are not communications between a client and counsel— documents numbered 1, 2, 3, 5, 6, 7, 10, 11, & 12:

■ A number of the documents at issue, while they refer to attorneys who played some role in decisions about the litigation, are not communications between the party/client (CISCO), and their attorneys, and thus cannot qualify for the attorney-client privilege. Documents 1 and 2 are identical

---

1. The court is aware that the medical problems of CISCO's president and CEO, Louis Regine, may prevent him from preparing or signing an affidavit. This does not, however, relieve the

plaintiffs from their burden of proof in establishing the application of the privileges. Another officer of CISCO could have submitted a sworn statement.

copies of a memo from Liebgold to Louis Regine, the President and CEO of CISCO, evaluating CISCO's litigation options based on the claims against the defendants in this action. Liebgold's advice, as set forth in the memo, was apparently based at least in part on the recommendations of two attorneys, Martin Siegel and Neil Connelley. Mr. Siegel is an attorney with the law firm representing the plaintiffs in this action, Berlack, Israels & Liberman LLP. Mr. Connelley is described by the plaintiffs as one of the lawyers "who CISCO consulted to determine whether to commence this action." 11/5/01 Galvan Letter at 2.

The memo is not, however, a communication between CISCO and those lawyers, nor is it a communication between the lawyers and Liebgold. It is a communication between the party and that party's outside accountant regarding litigation. Although the content of the memo appears to include attorneys' advice, nothing on its face indicates who hired the attorneys, how Mr. Liebgold became privy to the legal advice embodied in the memo, or why this memo might qualify for protection under the attorney-client privilege. "As is the case with all privileges, the party invoking the attorney-client privilege bears the burden of establishing all essential elements of the privilege." *Magee,* 172 F.R.D. at 638 (citing *People v. Osorio,* 75 N.Y.2d 80, 550 N.Y.S.2d 612, 549 N.E.2d 1183 (1989); *Priest v. Hennessy,* 51 N.Y.2d 62, 431 N.Y.S.2d 511, 409 N.E.2d 983 (1980)). The plaintiffs have not met this burden.

The plaintiffs claim that "certain documents that [Liebgold] reviewed cut to the core of the attorney-client privilege and are not implicated by his role as an expert." 11/5/01 Galvan Letter at 1. The burden of a party withholding documents on the basis of privilege cannot be " 'discharged by mere conclusory or ipse dixit assertions,' " howev-

er, and the plaintiffs offer an insufficient factual and legal basis for their claim of privilege in regard to these documents. *von Bulow v. von Bulow,* 811 F.2d 136, 146 (2d Cir.1987) (quoting *In re Bonanno,* 344 F.2d 830, 833 (2d Cir.1965)); *see also Strougo v. BEA Assocs.,* 199 F.R.D. 515, 519 (S.D.N.Y. 2001). It is clear from the record before the court that Liebgold was a trusted business advisor to Regine and CISCO, but that is not enough to bring him within the purview of the attorney-client privilege in regard to these documents. Even if the privilege did apply, the documents would be subject to a waiver analysis based on the disclosure of the attorneys' advice to Liebgold, and the privilege would be waived. See section A 2, *infra.*

Several other documents also fail to reflect a communication between client and attorney. Documents numbered 3, 5, 6, 7, 10, 11, and 12 [2] are all memos between Liebgold and Regine that reference various attorneys who might represent the plaintiff in the potential lawsuit or raise questions about the progress of the lawsuit, but they were not sent to or from attorneys, and do not constitute "communication[s] between client and counsel." Thus, none of these documents is protected by the attorney client privilege. The questions of whether these documents might be protected from disclosure under the work product privilege, and whether that privilege is waived by the fact that Mr. Liebgold has been designated as the damages expert for the plaintiffs at trial, are discussed *infra* at section B.

**2.) Communications between client and counsel disclosed to Liebgold—documents numbered 13, 29, 36, and unnumbered documents submitted on 11/27:**

Document 13 is a memo from Regine to Liebgold, copied to an attorney, Ken Fiorella. Document 29 [3] is a memo from Regine to

---

**2.** Documents 11 and 12 are copies of the same memo. Although the memo is not to or from an attorney, it does summarize attorney advice that was given to Louis Regine, and might be considered as an attorney-client communication that was waived by disclosure to Liebgold. That disclosure would, in any event, require its production.

**3.** The plaintiffs suggest that document 29 was not divulged to any third parties (see 11/5/01 Galvan Letter, at 3), but the face of the document labeled "29" in the submission to the court makes clear that it was copied to Liebgold.

Corrado Vasquez, the senior vice president of CISCO, copied to Liebgold, Katherine Buck, the Vice President, Secretary and Treasurer of CISCO, and an attorney, Neil Connelley. Document 36 is a memo from Regine to a law firm, copied to Liebgold, Vasquez, and Buck. Document 36 annexes to the memo a letter from attorney Kenneth S. Fiorella to Regine. Thus, these documents are arguably communications between counsel and client (CISCO). The unnumbered documents submitted on November 27 are clearly communications between counsel and client. They consist of a memo from Martin Siegel to Louis Regine, dated October 25, 1999, copied to Liebgold; a letter from Neil Connelley to Regine dated March 4, 1997, copied to Liebgold; a letter dated January 8, 1999 from Neil Connelley to Regine, copied to Liebgold; a memo from Siegel to Regine dated May 17, 1999, copied to Liebgold; a letter from Siegel to Regine dated March 10, 1999, copied to Liebgold; and a letter from Fiorella to Regine dated August 25, 1998 that does not, on its face, represent disclosure to Liebgold, but which has been identified by plaintiff's counsel as having been disclosed to him. See 11/26 Galvan Letter.

The defendants argue that disclosure of these documents to third parties waives any privilege that might otherwise exist. Disclosure to Buck and Vasquez, officers of the plaintiff corporation, does not waive the privilege, but Liebgold is in a different position. He is an outside accountant, not an officer of CISCO, and not a party to the action.

■ "Voluntarily disclosing the information contained in the documents to nonparties waives the attorney-client privilege, unless such disclosure was 'necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit.'" *Strougo,* 199 F.R.D. at 522 (quoting *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961)). The plaintiffs argue that disclosure to Liebgold falls into this category. Specifically, the plaintiffs argue that communications between a client's attorney and that client's outside accountant are privileged based on the recognition by New York state courts that "the attorney-client privilege may attach to communications between a client's agent and his attorney." *Hendrick,* 944 F.Supp. at 189.

■ While it is true that under New York law "communications to any person whose intervention is necessary to secure and facilitate the communication between an attorney and client are privileged, [such] as communications through an interpreter, a messenger or any other intermediary," that is not the case here. *Id.* CISCO argues that the disputed documents are privileged because "CISCO's accountant ... acted on CISCO's behalf when [he] communicated with CISCO's counsel." The problem with these arguments is that the documents do not in any way suggest that Liebgold's involvement was necessary to facilitate the communication between CISCO and its attorney, and the plaintiffs have not provided an explanation for the necessity of Liebgold's extensive involvement.

CISCO argues that the "Second Circuit has concluded that attorney-client communications shared with a client's outside accountant are privileged, analogizing such communications to a situation in which a 'client speaking a foreign language' requires the assistance of an 'interpreter.'" 10/9/01 Galvan Letter at 2 (citing *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961)). The plaintiffs' argument takes the holding in *Kovel* too far. Nothing in these documents suggests that Liebgold was assisting the attorney in rendering legal advice to CISCO by "interpreting" accounting principles to the lawyer. Indeed, other than a reference to cost-effectiveness in the attorney letter to Regine annexed to document 36, and a general discussion in a number of documents of the costs that might be incurred in the lawsuit, the documents do not involve accounting principles in any way.

The plaintiffs' real argument seems to be that disclosure of *any* attorney-client document to the client's outside accountant does not waive the attorney client privilege. The court does not agree, and finds that the attorney-client privilege as to these documents was waived by disclosure to Liebgold. As the court in *Strougo* found, "disclosure to an outside accountant whose expertise is cru-

cial to the lawyer's assessment of his client's case would not waive the privilege, while disclosure to the client's accountant who was not involved in the litigation would waive the privilege." Here, Liebgold was obviously very involved in the litigation, but nothing in the disputed documents suggests that his assistance was crucial to the lawyer's assessment of the case. Indeed, what is reflected in the documents before the court is that information was disclosed to Liebgold so that he could offer CISCO *his* assessment of the case, outside the accounting context.

Even if the plaintiffs were seeking primarily accounting advice, there would be a waiver under these circumstances. As the Second Circuit held in *Kovel*, "[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service (citations omitted), or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." 296 F.2d at 922. In *In re Horowitz*, 482 F.2d 72 (2d Cir.1973), the Second Circuit found that where advice "had already been obtained from the lawyers and the communications were then made available by the client to the accountant for purposes unrelated to the seeking of legal advice.... We deem it clear that subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege." Another court has found that "the application of the attorney/client privilege to communications with an accountant depends upon whether the accountant is acting as a means of translating financial data for the attorney or rather is acting as a financial advisor." *Summit Ltd. v. Levy*, 111 F.R.D. 40, 41 (S.D.N.Y.1986). Here, Liebgold was not translating financial data for the attorney, and thus disclosure to him of the documents in question waives the privilege.

The court is confronted here with a situation in which the outside accountant offered broadbased litigation advice to the client, ad-

vice that was sometimes shared with attorneys and sometimes not. While the court recognizes that everyone involved, including the various attorneys, apparently believed that Mr. Liebgold came under the umbrella of the privilege, the requisite elements have not been established. Under these circumstances, the court finds that the attorney client privilege was waived as to documents 13, 29, 36, and the unnumbered documents submitted on November 27th.

As discussed in greater detail *infra* at section B, although these documents are not protected by the attorney-client privilege, all of them would have been protected by the work product privilege, if not for Liebgold's designation as an expert.

### 3.) Documents protected from disclosure by the attorney client privilege-documents numbered 15, 16, 18, 24, 30 and 35:

Documents 15, 16, 18 and 24 are communications between Regine and CISCO's attorney, attaching drafts of the attorney's letters to potential defendants in this lawsuit. The defendants argue that drafts of these letters must be produced, but this court finds that these documents meet the standard for attorney-client communications, were not disclosed to outside parties other than principals of the plaintiff corporation, and are protected by the attorney-client privilege.

Document 30 is a memo from Regine to attorney Neil Connelley, dated March 14, 1997. On its face, it was not copied to third parties and is privileged. The court notes, however, that there is a discrepancy between the description of documents 29 and 30 on the "Table of Documents Withheld by CISCO and Challenged by Hanover" submitted by the defendants, and the labeling of those documents in the submission to the court, and the numbers may have been transposed. The court has based its rulings on the documents submitted, not the Table of Documents description. If document 30 was disclosed to Liebgold, the privilege has been waived. If document 29 was not disclosed, it can be withheld.

Document 35 is a fax sheet memo from Regine to an attorney, attaching an article for his review, not copied to other parties. It, too, is protected by the attorney client privilege. As explained in more detail *infra,* these documents are also protected by the work product privilege, and, because they were never reviewed by Liebgold, the privilege has not been waived by virtue of Liebgold's role as a testifying expert.

**B.) *Application of the Work Product Privilege:***

**1.) Are the documents protected by the work product privilege pursuant to Rule 26?**

The plaintiffs also invoke the work product privilege. Fed.R.Civ.P. 26(b)(3) provides that, "[s]ubject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for [a] party, or by or for that ... party's representative (including the ... party's attorney, consultant, surety, indemnitor, insurer or agent) ... only upon a showing that the party seeking discovery has ˙substantial need of the materials in the preparation of the party's case ..." As with the attorney-client privilege, the party invoking the work product privilege bears the burden of establishing all its elements. *See Magee,* 172 F.R.D. at 640 (citing *United States v. Constr. Prods. Research,* 73 F.3d 464, 473 (2d Cir.), *cert. denied,* 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996) (additional citations omitted)).

The threshold question is, therefore, whether the documents at issue were prepared in anticipation of litigation by CISCO or Cisco's representative. The court finds that they were. The documents all address the litigation that is now before the court, either prior to its inception or after, and meet the "prepared because of litigation" standard set forth by the Second Circuit in *United States v. Adlman,* 134 F.3d 1194 (2d Cir.1998). As to the issue of whether they were prepared by CISCO's "representatives" so as to come under the protection of the privilege, the court finds that requirement is also met. Louis Regine, CISCO's president,

prepared a number of them, others were prepared by attorneys, and still others were prepared by other representatives of CISCO, including Liebgold.

Although the work product privilege usually works to protect "attorneys' mental impressions, opinions or legal theories concerning specific litigation" from discovery, *Horn & Hardart Corp. v. Pillsbury Co.,* 888 F.2d 8, 12 (2d Cir.1989); *see also In re Grand Jury Proceedings,* 219 F.3d 175 (2d Cir.2000), it is also extended, by the very language of the rule itself, to the work product of other representatives of the party, including "the ... party's ... consultant, surety, indemnitor, insurer or agent." Generally, "the privilege aims to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation," and extending the privilege to representatives other than attorneys advances that goal. *Adlman,* 68 F.3d at 1501. Thus, the court finds that the work product privilege does apply to these documents.

■ Moreover, disclosure of these documents to third parties does not, in and of itself, constitute a waiver of the privilege. "Because the work product doctrine aims not only to preserve confidentiality, but also to protect the integrity of the adversary system, the privilege 'is not automatically waived by any disclosure to a third party.'" *Magee,* 172 F.R.D. at 641 (quoting *In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir.1982)). Instead, "[p]rotection is waived only if such disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Id.* (citing *In re Grand Jury Subpoenas Dated December 18, 1981 and January 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982) (additional citations omitted)). Thus, even if Liebgold, Buck or Vasquez were considered to be third parties, disclosure to them did not substantially increase such opportunity, and the privilege was not waived in that way. Finally, the defendants have not made a showing of substantial need for the materials in the preparation of their case (outside the context of Liebgold's role as testifying expert), and the work product privilege would thus apply to all of the documents at issue.

The inquiry cannot end there, however, because every one of the documents was reviewed or prepared by Samuel Liebgold, who has been retained by the plaintiffs to provide expert testimony at trial, and his review of the documents may constitute a waiver of the work product privilege under Rule 26(a)(2)(B).

### 2.) The application of Rule 26(a)(2)(B):

The plaintiffs have described Samuel Liebgold as both the outside accountant who worked as a financial consultant and business advisor to CISCO and as Cisco's designated damages expert at trial. This raises the question of what documents a testifying expert who is also allegedly a consultant must disclose pursuant to Fed.R.Civ.P. 26(a)(2)(B). That subsection mandates disclosure of all information "considered" by an expert in forming his or her opinion, despite the arguable application of attorney client privilege or the work product doctrine. Prior to 1993, information about experts was obtained largely through interrogatories, and "courts held widely divergent views as to the discoverability of work product information that had been shared between counsel and a testifying expert." *Karn v. Ingersoll–Rand,* 168 F.R.D. 633, 635–36 (N.D.Ind.1996)(citing *Intermedics, Inc. v. Ventritex, Inc.,* 139 F.R.D. 384 (N.D.Cal.1991)). In 1993, the Rule was amended to address the issue.

Pursuant to the 1993 amendments, Fed. R.Civ.P. 26(a)(2)(B) now requires that testifying experts must submit a written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions;" and other material. The Advisory Committee Notes to the 1993 Amendments state that the expert report must "disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."

Although the Second Circuit has not yet ruled on the issue of whether and to what degree the work product privilege applies to material presented to an expert witness who will testify at trial, and other courts are divided on the issue, the undersigned has found that the 1993 revision to Rule 26(a)(2)(B) does not exempt "core" work product from the disclosure requirement, nor does it limit disclosure to factual material as opposed to mental impressions or opinions of counsel. *See Weil v. LISB,* 206 F.R.D. 38 (E.D.N.Y.2001) (WDW). This result is mandated by the plain language of the Rule itself, and is buttressed by both the explicit Advisory Committee comments and the weight of authority. The Court of Appeals for the Federal Circuit, the only Circuit to address this issue, noting contrary authority at the district court level, held that "the 1993 amendments to Rule 26 ... make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report," including core attorney work product. *In re Pioneer Hi–Bred Int'l, Inc.,* 238 F.3d 1370, 1375 (Fed.Cir.2001).

Courts in numerous jurisdictions have reached the same conclusion as the Federal Circuit's on this issue, basing their rulings on the plain language of the amended rule, the Advisory Committee Notes, and various policy considerations. *See, e.g., MCI Communications Corp. v. Dataline, Inc.,* 2001 WL 1335291, at *1, 2001 U.S. Dist. LEXIS 18144, at *1–2 (Oct. 29, 2001); *In re Air Crash at Dubrovnik, Croatia on April 3, 1996,* 2001 WL 777433, at *3, 2001 U.S. Dist. LEXIS 14334, at *8 (D. Conn. June 4, 2001); *Amway Corp. v. Procter & Gamble Co.,* 2001 U.S. Dist. LEXIS 5317, at *3 (W.D.Mich. Apr. 17, 2001); *Suskind v. Home Depot Corp.,* 2001 WL 92183, at *2, 2001 U.S. Dist. LEXIS 1349, WL 92183, at *5 (D.Mass. Jan. 2, 2001); *Johnson v. Gmeinder,* 191 F.R.D. 638, 645 (D.Kan.2000); *Simon Prop. Group, L.P. v. mySimon, Inc.,* 194 F.R.D. 644, 647 (S.D.Ind.

2000); *TV–3, Inc. v. Royal Ins. Co. of America*, 193 F.R.D. 490, 491, *aff'd*, 194 F.R.D. 585, 589 (S.D.Miss.2000); *W.R. Grace & Co.–Conn. v. Zotos, Int'l, Inc.*, 2000 WL 1843258, at *3–4, 2000 U.S. Dist. LEXIS 18096, at *10–11 (W.D.N.Y. Nov. 2, 2000) (citing two additional, unpublished W.D.N.Y. decisions); *Culbertson v. Shelter Mut. Ins. Co.*, 1999 WL 109566, 1999 U.S. Dist. LEXIS 2295 (E.D.La. Mar. 2, 1999); *Lamonds v. General Motors Corp.*, 180 F.R.D. 302, 305 (W.D.Va.1998); *F.D.I.C. v. First Heights Bank, FSB*, 1998 U.S. Dist. LEXIS 21506, at *13 (E.D.Mich. Mar. 3, 1998); *Baerga v. Hospital for Special Surgery*, 1998 U.S. Dist. LEXIS 17716, at *1 (S.D.N.Y. Nov. 9, 1998); *B.C.F. Oil Ref., Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 66 (S.D.N.Y.1997); *Barna v. United States*, 1997 WL 417847 at *1, 1997 U.S. Dist. LEXIS 10853, at *2 (N.D.Ill. July 18, 1997); *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D.Md.1997); *Furniture World, Inc. v. D.A.V. Thrift Stores*, 168 F.R.D. 61 (D.N.M. 1996); *Karn v. Ingersoll–Rand*, 168 F.R.D. 633, 635–36 (N.D.Ind.1996); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 1993 WL 360674, 1993 U.S. Dist. LEXIS 11798 (C.D.Cal. Aug. 6, 1993).

As noted, the 1993 amendments, *inter alia*, added subsection (a)(2) to require the production of all materials "considered" by the expert in forming his opinions. As the *Karn* court noted, the "drafters of the new Rule clearly contemplated that the term 'considered' was something different than the term 'relied,' given that they rejected an earlier draft version of subdivision (a)(2), which required that the expert's report set forth 'the data or other information relied upon in forming such opinions.' 137 F.R.D. 53, 89 (1991) (additional citation omitted)." *Karn*, 168 F.R.D. at 635. " 'Considered,' which simply means 'to take into account,' clearly invokes a broader spectrum of thought than the phrase 'relied upon,' which requires dependence on the information." *Id.* (citing Webster's New Riverside Univ. Dictionary at 301, 993 (1984) & *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 1993 WL 360674, 1993 U.S. Dist. LEXIS 11798 (C.D.Cal. Aug. 6, 1993)(court defined word "considered" as encompassing not only documents upon which the experts relied in forming their opinions but also those documents reviewed by the experts as well)). The choice of the broader word "considered," in conjunction with the Advisory Committee's explanation that it thought the change would forestall future argument about the application of privilege to documents considered by the expert, convinces this court that the 1993 amendment "definitely proscribes" work product protection in this context.

This result rests on significant policy considerations. First, requiring disclosure of all material considered by the expert, including otherwise privileged work product, will help promote more effective cross-examination, and will reveal the extent, if any, of the influence counsel may have had on Liebgold's testimony. Such revelation is essential, given the current role of expert testimony in federal litigation. The use of expert testimony has grown exponentially over the last decades, and it presents unique challenges to the fact finder faced with the task of weighing the credibility of an expert witness. As the Supreme Court has observed, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial judge thus "depends upon the efficacy of cross-examination by the party opposing the expert's testimony to point out any weaknesses which might affect its admissibility, as does the jury in determining how much weight to give to the expert's testimony." *Musselman*, 176 F.R.D. at 200. Given the importance that expert testimony can assume, "a jury is entitled to know everything that influenced an expert's opinion in order to assess his credibility," including legal theories or conclusions about a case that an attorney has shared that may have shaped the expert's opinion. *Barna*, 1997 WL 417847 at *2.

The plaintiffs do not dispute this rule, but argue that Mr. Liebgold falls into a special category of experts, who have also been hired as consultants in an area discrete from the area of expertise about which they will testify at trial.

### 3.) Samuel Liebgold's Dual Role as Consultant/Expert:

■ Specifically, CISCO argues that the documents that the defendants seek have "nothing to do with [Liebgold's] role as an expert in this case. As CISCO's accountant, Mr. Liebgold has acted as a business advisor to CISCO." In that capacity, the plaintiffs argue, "CISCO consulted Mr. Liebgold on a variety of matters, including the decision whether to bring this lawsuit. To that end, Mr. Liebgold was part of the CISCO team that received copies of legal memoranda and letters from the attorneys who CISCO consulted to determine whether to commence this action." The plaintiffs continue, claiming that Liebgold "received those documents prior to the commencement and, therefore, long before he was designated as an expert in this case." 11/5/01 Galvan Letter at 2.

The "gray" area of the application of Rule 26 to a consultant/expert was discussed in *B.C.F. Oil*, 171 F.R.D. at 61. That court noted that an earlier decision had found it "conceivable that an expert could be retained to testify and in addition to advise counsel outside of the subject of his testimony. Under such a circumstance it might be possible to claim a work product privilege if this delineation were clearly made." *Id.* (quoting *Beverage Marketing Corp. v. Ogilvy & Mather*, 563 F.Supp. 1013, 1014 (S.D.N.Y.1983)). *B.C.F. Oil* also considered the case of *Detwiler Trust v. Offenbecher*, 124 F.R.D. 545 (S.D.N.Y.1989), and concluded that "the rule to be gleaned from these two Southern District cases is that documents having no relation to the expert's role as an expert need not be produced but that any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." *B.C.F.*, 171 F.R.D. at 62.

The need for clarity regarding the distinction between documents having no relation to an individual's role as expert and those "considered" by that individual in the production of his or her expert report has been strictly enforced. *See, e.g., In re Air Crash*, 2001 WL 777433, at *3–12, 2001 U.S. Dist. LEXIS 14334 at *9–39 (citing *Messier v. Southbury Training Sch.*, 1998 WL 422858, *2, 1998 U.S. Dist. LEXIS 23221, *7 (D. Conn. June 29, 1998)); *see also W.R. Grace & Co.-Conn.*, 2000 WL 1843258 at *6, 2000 U.S. Dist. LEXIS 18096 at *20. The *In re Air Crash* court quoted *Messier* for the proposition that where "an expert is retained as both a consultant and a testifying witness, the work-product doctrine may be invoked to protect work completed by the expert in [his] consultative capacity as long as there exists a clear distinction between the two roles." *In re Air Crash*, 2001 WL 777433 at *3, 2001 U.S. Dist LEXIS 14334 at *9. "The Messier court included a caveat, however, stating that 'any ambiguity about which function was served by the expert when creating a document must be resolved in favor of discovery.'" *Id.* at *3, 2001 U.S. Dist LEXIS 14334 at *10. Here, where Liebgold's role as a litigation consultant was so pervasive, the court finds that the delineation between his two roles has not been clearly made, and the ambiguity must be resolved in the defendants' favor. This result is mandated by the policies, discussed *supra*, underlying the requirement that a testifying expert disclose all materials that he considered in reaching his opinion, and on the rule that the party seeking to compel the production of the documents "'should not have to rely on the [resisting party's] representation that the documents were not considered by the expert in forming his opinion.'" *Id.* at *4, 2001 U.S. Dist LEXIS 14334 at *12 (quoting *B.C.F. Oil*, 171 F.R.D. at 62).

The plaintiffs argue that with respect to Liebgold, "the documents he reviewed historically (i.e., before this action was filed) and which the defendants now seek, have nothing to do with ... his role as an expert in this case." Plaintiffs claim that the disputed documents were reviewed by Liebgold "long before he was designated as [a damages] expert in this case," and that "it is possible to distinguish between documents that relate to damages and documents that relate to liability." 11/5/01 Galvan letter at 2. While it is true that liability and damages are separate components of a lawsuit, and little if anything in the documents at issue overtly addresses damages, the court finds that it is impossible to segregate Liebgold's role as a business

consultant who advised CISCO regarding many aspects of the litigation with his role as a testifying expert. Nothing before the court demonstrated with clarity how Liebgold, in his capacity as a damages expert, could not have considered, on some level, his comprehensive knowledge of, and pre- and post-litigation exposure to, all confidential information regarding the lawsuit. Moreover, the fact that Liebgold acted as a consultant prior to being "hired" as the damages expert cannot be the determining factor. If chronology was determinative, the opportunity for parties to shield disclosure of otherwise discoverable documents considered by their experts simply by hiring those individuals first as consultants and later as experts would be too great.

Thus, this court finds that the ambiguity surrounding the documents must be resolved in favor of the defendants with a finding that the work product privilege has been waived.

### C.) *Conclusion:*

The plaintiffs have two options—they can produce documents numbered 1, 2, 3, 5, 6, 7,10, 11, 12, 13, 29, and 36, along with the unnumbered documents submitted on November 27th, or they can designate a new expert. Documents numbered 15, 16, 18, 24, 30[4] and 35 need not be produced, inasmuch as they are protected by both the attorney client and work product privileges, and there is no indication that they were "considered" or even seen, by Mr. Liebgold. The plaintiffs shall either produce the documents or designate a new damages expert by December 17, 2001.

### ORDER

Pending before the court is the plaintiffs' motion for reconsideration of the order dated December 6, 2001, which found that no attorney client privilege was demonstrated by the plaintiffs in regard to a number of documents, and that, despite the application of the work product doctrine to a number of those same documents, they had to be produced because plaintiffs had failed to demonstrate that they had not been "considered" by their designated damages expert, Samuel Liebgold. The plaintiffs were ordered to produce the documents or find a new damages expert.

By letter dated December 17, 2001 the plaintiffs asked the court to reconsider the December 6th order. At a conference call held on December 18th, the undersigned granted plaintiffs' request to make a motion for reconsideration. The plaintiffs submitted their motion on December 21st, including a declaration from Louis Regine and an affidavit from Samuel Liebgold. The defendant opposed the motion by letter dated January 4, 2002. Upon reconsideration, the court adheres to its original ruling, for the reasons set forth *infra.*

As a threshold matter, the court notes that it is not impressed with the plaintiffs' claim that they did not make a more complete factual showing on the original motion because the Individual Rules limited them to three pages. The Individual Rules, of course, reflect the long standing Local Civil Rules. Nothing prevented the plaintiffs from requesting permission to file a longer response, nor were they barred from including affidavits along with their original submission. Local Rule 37(c) plainly states that discovery motions and opposition to such motions shall be set forth in "a letter not exceeding three pages in length ... *and attaching relevant materials.*" Surely, the statements of Messrs. Regine and Leibgold were relevant to the claim of privilege, but the plaintiffs failed to provide them. The plaintiffs had the burden of proof in establishing their claim of privilege, and they failed to meet it. In any event, their statements, which describe Mr. Leibgold as a trusted confidant of Mr. Regine who acted as an agent of the plaintiffs in connection with litigation decision-making, do not change the result.

To succeed on this motion for reconsideration, the plaintiffs must show that "the Court overlooked controlling decisions

---

**4.** See comments re documents 29 & 30 on page 9, *supra.* If documents numbered 29 and 30 were mismarked in the submission to the court, whichever document was disclosed to Liebgold must be produced, and whichever one wasn't may be withheld.

or factual matters that were put before it on the underlying motion." Local Civil Rule 6.3. "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *L.I. Head Start Child Development Services, Inc. v. Kearse,* 96 F.Supp.2d 209, 211 (E.D.N.Y.2000) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256–57 (2d Cir. 1995)). A motion for reconsideration is not an opportunity to present facts that were known to the party on the earlier motion, nor new legal theories in place of the ones used earlier that did not prevail. *See id.* at 211–212; *see also PAB Aviation, Inc. v. United States,* 2000 WL 1240196 at *1, 2000 U.S. Dist. LEXIS 12201 at *2–3 (E.D.N.Y.2000). "Nor may the party merely reiterate or repackage an argument previously rejected by the court; that argument is for appeal." *PAB Aviation,* 2000 WL 1240196 at *1, 2000 U.S. Dist. LEXIS at *2–3.

■ On this motion, the plaintiffs argue that Mr. Liebgold was an agent of the plaintiffs and that he stood in the shoes of the client, CISCO, in his dealings with the attorneys so as to facilitate communication, and that the plaintiffs had a reasonable expectation of confidentiality under the circumstances. The defendants claim that the agency argument is raised for the first time on this motion, and thus cannot be considered. Even if the court were to accept the agency theory, however, it would not change the end result. Assuming that the attorney client privilege did apply to the documents still at issue, that privilege would be subject to waiver under Rule 26(a)(2)(B), just as the work product privilege is.

As explained in detail in the earlier order, pursuant to the 1993 amendments, Fed. R.Civ.P. 26(a)(2)(B) now requires that testifying experts must submit a written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions;" and other material. The Advisory Committee Notes to the 1993 Amendments state that the expert report must "disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. *Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed."* (Emphasis added.) Although this rule has been considered more often in the work product context, it applies, as the Advisory Notes make clear, to any claim of privilege.

■ Thus, application of the attorney client privilege to the documents at issue would be subject to the same analysis regarding Mr. Leibgold, the designated damages expert, as the one set forth in the December 6th order in the work product context. When a party claims that an expert has also been hired as a consultant in an area discrete from the area of expertise about which he will testify at trial, the party must demonstrate that "any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." *B.C.F. Oil Ref., Inc. v. Consolidated Edison Co.,* 171 F.R.D. 57, 62 (S.D.N.Y.1997). Moreover, the party seeking to compel the production of documents "'should not have to rely on the [resisting party's] representation that the documents were not considered by the expert in forming his opinion.'" *In re Air Crash,* 2001 WL 777433 at *4, 2001 U.S. Dist. LEXIS 14334 at *12 (D. Conn. June 29, 1998) (quoting *B.C.F. Oil,* 171 F.R.D. at 62).

On this motion, the plaintiffs argue that Mr. Liebgold did not consider any of the documents at issue when he reached his expert opinion. Galvan Letter at 2–3, Leibgold Aff. at ¶ 6. Mr. Leibgold states that, in his capacity as expert, he was asked to calculate the loss of revenue attributable to CISCO and CISCO Nevada's loss of business, and that in making that calculation, he assumed that the defendants were liable for the claims against them. Thus, he continues, he "did

not, nor was [he] required to, consider any evidence that might establish the defendants' liability in preparing his expert report." Aff. at ¶ 6. This claim was raised, or at least suggested, on the original motion and was considered by the court in rendering its earlier decision. On a motion for reconsideration, the movant may not "merely reiterate or repackage an argument previously rejected by the court; that argument is for appeal." *PAB Aviation*, 2000 WL 1240196 at *1, 2000 U.S. Dist. LEXIS 12201 at *2–3 (citing *Brown v. J.F.H. Mak Trucking*, 1999 WL 1057274, at *1 (E.D.N.Y. Oct. 5, 1999)).

In urging reconsideration, the plaintiffs rely on *Simon Property Group v. mySimon, Inc.*, 194 F.R.D. 644 (D.Ind.2000) in support of their argument that documents relevant to liability provided to a damages expert are not discoverable pursuant to Rule 26 because those documents do not pertain to damages. In its opposition, the defendant argues that *Simon* is inapplicable to the instant circumstances, because that opinion considered documents that had been inadvertently disclosed to the damages expert, as opposed to the intentional disclosure of documents to Mr. Leibgold. The defendants are correct that the analysis in *Simon* focuses on the inadvertent disclosure of documents to an expert, but the plaintiffs are also correct that, in *Simon*, the court reviewed the documents and determined that they had little to do with the subject matter of the expert's testimony and did not have to be produced. 194 F.R.D. at 649. The court cautioned, however, that "[i]f the documents in question had laid out mySimon's counsel's theories on damages issues or had contained factual information that counsel had gathered from witnesses on the issue of damages, the court would have little difficulty concluding that SPG would be entitled to see the documents for the purpose of cross-examining" the expert. *Id.* The *Simon* court also added that, in reaching its decision, it did not rely "solely on [the expert's] statement that she did not 'consider' or rely upon the documents in question," and recognized that in other cases,

"such an assertion by an expert witness could become too easy a dodge." *Id.* at 650.

In any event, the decision in *Simon* does not change the decision of the undersigned set forth in the December 6th order. *Simon* is not controlling authority in this court, and the undersigned was aware of, and cited to it, in the earlier opinion, and reached an opposite conclusion, the reasoning in *Simon* notwithstanding. As was made clear in the earlier order, this court determined that because of Mr. Leibgold's pervasive role in this lawsuit, and the resulting difficulty in segregating the many documents reviewed by Mr. Leibgold from his role as damages expert, the outcome here should be that the plaintiffs should either turn over the documents or get a new expert. Even putting aside the fact that the plaintiffs have not pointed to any overlooked facts or controlling law, and have thus not met the strict standard that applies to a motion for reconsideration, the court, upon reconsideration, adheres to its original decision.

Based on this determination, the plaintiffs once again must choose between two options—they can produce documents numbered 1, 2, 3, 5, 6, 7, 10, 11, 12, 13, 29 and 36, along with the unnumbered documents submitted on November 27th, or they can designate a new expert. Documents numbered 15, 16, 18, 24, 30[1] and 35 need not be produced, inasmuch as they are protected by both the attorney client and work product privileges, and there is no indication that they were "considered" or even seen, by Mr. Liebgold. The plaintiffs shall either produce the documents or designate a new damages expert by February 11, 2002. If the plaintiffs appeal this order to Judge Spatt, the order will be stayed until ten days after Judge Spatt renders a decision on the appeal.

**SO ORDERED.**

---

1. See comments re documents 29 & 30 on page 9 of the Dec. 6th order. If documents numbered 29 and 30 were mismarked in the submission to the court, whichever document was disclosed to Liebgold must be produced, and whichever one wasn't may be withheld.