**SIMON PROPERTY GROUP L.P., a Delaware limited partnership, Plaintiff,**

v.

**mySIMON, INC., a California corporation, Defendant.**

No. IP 99–1195–C H/G.

United States District Court, S.D. Indiana, Indianapolis Division.

June 20, 2000.

David C. Campbell, Daniel L. Boots, Bingham, Summers, Welsh & Spilman, Indianapolis, IN.

Ronald A. Sandler, Jones, Day, Reavis & Pogue, Chicago, IL.

Terrence M. Murphy, Jones, Day, Reavis & Pogue, Dallas, TX.

Richard A. Huser, James Dimos, Joel Tragesser, Locke, Reynolds, LLP, Indianapolis, IN.

---

## ENTRY ON PLAINTIFF'S EMERGENCY DISCOVERY MOTION

HAMILTON, District Judge.

On June 6, 2000, plaintiff Simon Property Group L.P. ("SPG") filed and requested a quick hearing on an emergency motion to compel discovery and for sanctions. Trial is set for August 21, 2000. The court set a hearing for June 14, 2000. Defendant mySimon, Inc. filed its response on June 13, 2000. After considering the parties' written submissions and oral arguments, plaintiff's motion is now granted in part and denied in part as set forth below.

1. *Documents Submitted to Defendant's Damages Expert:* The most sharply focused dispute concerns four documents that defendant's counsel submitted to defendant's damages expert, Cate Elsten. On April 14, 2000, defendant's counsel served on plaintiff's counsel a copy of Elsten's preliminary report. Included as part of the report was an Exhibit B listing documents Elsten had "reviewed" in preparing her report and forming her opinion. See Fed.R.Civ.P. 26(a)(2)(B) (retained expert's report shall contain a complete statement of "the data or other information considered by the witness in forming the opinions"). Four documents listed on Exhibit B have been numbered as Documents 40, 41, 42, and 44 for purposes of an *in camera* inspection by the court. They have been placed in the record under seal so that only court personnel may inspect them.

Document 40 is a package of materials including: (a) a cover letter from mySimon's counsel to an attorney for Hartford Insurance dated February 28, 2000; (b) a memorandum to the file from mySimon's counsel with several pages of notes on matters to follow up after depositions; (c) a detailed memorandum from mySimon's counsel to Hartford's lawyer dated February 27, 2000, setting forth the status of the litigation, current issues, impressions of witnesses, and strategy; (d) attached curriculum vitae of proposed expert witnesses; and (e) a detailed letter from mySimon's counsel to Hartford's lawyer dated January 31, 2000, with analysis of strategies and issues, including the possible need for a damages expert.

Document 41 is a package of correspondence dated January 21, 2000, from mySimon's counsel in this lawsuit to its CEO and

an outside lawyer with the Wilson Sonsini firm on the status of the litigation and numerous discovery issues.

Document 42 consists of correspondence between mySimon's lawyers and its CEO and director of finance in January 2000 relating to the lawsuit and insurance coverage issues. The document includes some attachments from third-party correspondence which the court assumes has been produced independently.

Document 44 consists of correspondence between mySimon and its counsel in this lawsuit, and between mySimon's counsel and Hartford evaluating the claims in the lawsuit in the autumn of 1999.

After mySimon's lawyers received a report from SPG's damages expert, the lawyers for mySimon prepared a package of materials and sent them to Elsten to review in developing her opinions on damages. A lawyer for mySimon reviewed the documents to be sent to Elsten. The lawyer did not intend to include Documents 40, 41, 42, and 44 in the package, but he did not notice that they had been included in the package.

mySimon's counsel first noticed the problem when SPG's counsel contacted them and asked for copies of all documents listed on Elsten's Exhibit B that had not already been produced. When mySimon's lawyers received the request, they realized for the first time that Documents 40, 41, 42, and 44 had been sent to Elsten. In response to SPG's request, mySimon's counsel produced all listed documents except these four, as to which it asserted attorney-client and attorney work product privileges.

Elsten has submitted an affidavit explaining that she "reviewed" the four documents in question but did not "consider, rely or take into account" these four documents in developing her opinions.

At least prior to the inadvertent disclosure of the documents to Elsten, the documents certainly qualified for protection under both the attorney-client privilege and the attorney work product privilege, including the core

protection for "mental impressions, conclusions, opinions, or legal theories" of counsel. See Fed.R.Civ.P. 26(b)(3); see generally-*Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Plaintiff SPG contends, however, that mySimon waived both privileges by disclosing the documents to Elsten, as well as by failing to list the documents on a privilege log any earlier than it did. mySimon contends the disclosure was inadvertent and should not be deemed a waiver of either privilege.

■ Questions of privilege in this case are governed by Rule 501 of the Federal Rules of Evidence, which calls for application of the federal common law of privilege with respect to the federal claims in the lawsuit. Where the principal claims in a lawsuit arise under federal law, the presence of some state law claims within the court's supplemental jurisdiction generally should not affect the court's obligation to apply federal law. See *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 & n. 3 (7th Cir. 1981). The Seventh Circuit also noted in *Memorial Hospital*, however, that federal courts should respect state court decisions on privileges and try to accommodate them when doing so would not impose a "substantial cost to federal substantive and procedural policy." *Id.* at 1061, quoting *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976).

The first issue here is whether the work-product privilege was waived by disclosure of the documents to a retained expert witness. On this question, the federal courts have been divided, at least since the 1993 amendments to Rule 26. The more persuasive decisions hold that at least intentional disclosure of opinion work-product to a testifying expert waives the privilege. In *Karn v. Ingersoll–Rand Co.*, 168 F.R.D. 633, 637–41 (N.D.Ind.1996), Magistrate Judge Cosbey considered this issue in detail and thoroughly analyzed the case law, commentaries, and competing policy arguments. He held that the requirements for disclosure of matters "considered" by a testifying expert in forming his or her opinions prevailed over any

claim of work-product privilege, including claims that documents constituted "opinion" work-product. In light of the 1993 amendments to Rule 26(a)(2), he specifically rejected any distinction between documents that the expert "reviewed" and those that the expert "relied upon." See 168 F.R.D. at 636–39; accord, *Lamonds v. General Motors Corp.*, 180 F.R.D. 302, 305–06 (W.D.Va.1998) (opinion work-product privilege waived by disclosure to testifying expert); *Musselman v. Phillips*, 176 F.R.D. 194, 199–202 (D.Md. 1997) (same); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York*, 171 F.R.D. 57, 64–67 (S.D.N.Y.1997) (same); *Barna v. United States*, 1997 WL 417847, *2–3 (N.D.Ill. July 23, 1997) (same). See also 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2016.2, at 252 (2d ed. 1994) ("At least with respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, was intended to pretermit further discussion and mandate disclosure despite [the work product] privilege."); *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 387–97 (N.D.Cal.1991) (adopting and applying balancing test in thoughtful opinion before 1993 amendments to Rule 26). Other courts have disagreed, however, with the treatment of this issue in *Karn*. See, *e.g.*, *Nexxus Products Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 9–11 (D.Mass. 1999) (opinion work-product privilege not waived by disclosure to testifying expert); *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 642–43 (E.D.N.Y.1997) (same); *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 294–96 (W.D.Mich.1995) (allowing discovery of factual work product disclosed to testifying expert but not opinion work-product); *All West Pet Supply Co. v. Hill's Pet Products Div., Colgate–Palmolive Co.*, 152 F.R.D. 634, 638–39 (D.Kan.1993) (opinion work-product privilege not waived by disclosure to testifying expert).

After reviewing these decisions, this court agrees with Magistrate Judge Cosbey's holding and reasoning in *Karn* and with the other courts that have followed that decision. An intentional disclosure of opinion work-product to a testifying expert witness effectively waives the work-product privilege. Without repeating the extensive debate in the cited opinions, under Rule 26, an attorney should not be permitted to give a testifying expert witness a detailed "road-map" for the desired testimony without also giving the opposing party an opportunity to discover that "map" and to cross-examine the expert about its effect on the expert's opinions in the case.[1]

Thus, SPG is entitled to discovery of Documents 40, 41, 42, and 44 unless the fact that the disclosure of the documents to Elsten was inadvertent makes a difference here. Neither the Seventh Circuit nor the Supreme Court of the United States has addressed directly the issue of waiver by inadvertent disclosure. In *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126–27 (7th Cir. 1997), the Seventh Circuit reviewed the law in this area in *dicta*, as part of the background for deciding whether the United States had waived a privilege for law enforcement investigation materials by making a deliberate but selective disclosure of certain materials to directors of a company that was a target of an investigation. The Seventh Circuit did not differentiate among different evidentiary privileges in addressing waiver issues. Although the court's discussion of inadvertent disclosures was *dicta*, it clearly was also considered and thoughtful *dicta* that is instructive here.

The Seventh Circuit made one important point for this case: a truly harmless mistake is not a compelling reason for stripping a person of a privilege. *Id.* at 1127 ("failing to be careful—committing a mistake that while careless may also be harmless—is not by

---

1. mySimon relies on Magistrate Judge Endsley's opinion in *Dominguez v. Syntex Laboratories, Inc.*, 149 F.R.D. 158, 164–65 (S.D.Ind.1993), which ordered production of facts and information provided to an expert witness but only after redaction of opinion work-product. This court believes the 1993 amendments to Rule 26 have effectively superseded the analysis of this issue in *Dominguez*.

648

itself a compelling reason for stripping a person of his privilege"). At the same time, where the inadvertent disclosure poses a serious prospect of harm to an opponent in litigation, courts tend to have little sympathy for the party who made the mistake. (The risk of harm to the opponent tends to be greater with respect to intentional selective disclosures than with inadvertent ones.)

The general discussion in *Dellwood Farms* is consistent with this court's earlier treatment of an inadvertent disclosure of a privileged attorney-client communication in *Draus v. Healthtrust, Inc.*, 172 F.R.D. 384, 386–90 (S.D.Ind.1997) (finding waiver); see also *In re Recombinant DNA Technology Patent and Contract Litigation*, 30 U.S.P.Q.2d 1881, 1906–07 (S.D.Ind. March 22, 1994) (Dillin, J.) (reviewing case law and finding waiver under balancing approach). In *Draus*, the court reviewed the three principal approaches to inadvertent disclosures of privileged documents.

■ The first might be termed the strict liability approach, so that any non-privileged disclosure, no matter how slight and no matter to whom, forfeits the privilege. See, *e.g.*, *In re Sealed Case*, 877 F.2d 976, 980 (D.C.Cir.1989); *F.D.I.C. v. Singh*, 140 F.R.D. 252, 253 (D.Me.1992). A second is the subjective intent approach, so that only a deliberate disclosure forfeits the privilege. See, *e.g.*, *Helman v. Murry's Steaks, Inc.*, 728 F.Supp. 1099, 1104 (D.Del.1990); *Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951, 954 (N.D.Ill.1982). The third might be called the skeptical balancing approach, in which the court considers all the relevant circumstances, including (1) the reasonableness of precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery, when the disclosure occurs in that context; (4) the extent of the disclosure; and (5) the "over-

riding issue of fairness." See *Draus*, 172 F.R.D. at 387, citing *Alldread v. City of Grenada*, 988 F.2d 1425, 1435 (5th Cir.1993); *Bud Antle, Inc. v. Grow–Tech Inc.*, 131 F.R.D. 179, 183 (N.D.Cal.1990); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 208–09 (N.D.Ind. 1990) (reviewing case law and rejecting subjective approach).[2]

The Indiana Court of Appeals has adopted a variation on this third approach. In *JWP Zack, Inc. v. Hoosier Energy Rural Electric Cooperative, Inc.*, 709 N.E.2d 336, 342 (Ind. App.1999), the court rejected both the strict liability ("objective") approach and the subjective approach and instructed trial courts to consider "all of the relevant circumstances in determining whether the protection of the privilege is to be forfeited because of an accidental disclosure." The court chose not to approve any "rigid set of criteria" but favorably cited the *Lois Sportswear* factors, which are the same as those discussed in *Draus*. See 709 N.E.2d at 342, citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y.1985), which is often cited as the source of those factors. The Indiana court also held it would review a trial court's decision on the waiver issue on an abuse-of-discretion standard.

In *Draus* this court rejected the subjective approach but did not need to make a choice between the strict liability and balancing approaches because both produced the same result. In this case, however, there is a difference, and this court adopts the balancing approach. That approach is most consistent with the Seventh Circuit's discussion in *Dellwood Farms*, and it is consistent with Indiana privilege law as set forth in *JWP Zack*. The balancing approach recognizes that the problem of inadvertent disclosure can arise in many variations. Some disclosures may be truly harmless, such as where a privileged document is disclosed only con-

**2.** This third approach might be called "skeptical" because there are limits as to how far the courts should go to rescue a party from its own carelessness, at least when there is any serious prospect that doing so would impose any harm or prejudice to the opponent. See *In re Recombinant DNA Litigation*, 30 U.S.P.Q.2d at 1910 ("Moreover, in fairness to all involved in the litigation, there is a certain point past which the Court should not intervene to rectify the mistakes of a party or that party's counsel.").

structively or minimally to a third party, as when the third party merely glanced at a document, or marked it for copying without reading it, or merely had access to a file cabinet containing it but did not actually read it. See, *e.g., Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 51–52 (M.D.N.C.1987) (merely glancing at file or designating documents for copying might not justify waiver if essence of contents has not yet been disclosed); *Chubb Integrated Systems Ltd. v. National Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C.1984) (mere fact that opponents had opportunity to open file drawer cannot constitute disclosure sufficient for waiver). In such cases, it is difficult to see how continued recognition of the privilege harms the interests the privilege is intended to balance. In addition, the balancing test does not pose any serious risk of undermining incentives for parties and lawyers to be careful about protecting privileged documents. The risks are great enough to induce reasonable care in most cases.

■ The first factor of the balancing test is the reasonableness of the precautions taken to prevent inadvertent disclosure. As the court noted in *Draus,* it is difficult for a party to show it took reasonable precautions to prevent disclosure of privileged documents after those precautions failed. 172 F.R.D. at 388, citing *International Digital Systems Corp. v. Digital Equipment Corp.,* 120 F.R.D. 445, 449 (D.Mass.1988). In this case, an experienced lawyer reviewed the documents to be sent to Elsten but missed these four documents protected by both the attorney-client and work product privileges. There is no additional detail here, nor did the task involve a huge volume of documents or inordinate time pressure. The court cannot say that mySimon took reasonable steps to prevent the error.

The second factor is the time taken to rectify the error. mySimon's lawyers learned of their error several weeks after it occurred. They learned of it when SPG's lawyers asked for copies of everything on Elsten's Exhibit B listing documents she had reviewed. However, unlike many cases of inadvertent disclosure in discovery, mySimon never turned over the documents to SPG's lawyers so that they began to use them. Cf. *In re Recombinant DNA Litigation,* 30 U.S.P.Q.2d at 1907–08 (privilege was waived where privileged documents had been used by receiving party for two weeks before error was identified).

The third factor is the scope of discovery or the process in question. mySimon did not send a massive amount of documents to Elsten. This factor tends to support a finding of waiver.

The fourth factor is the extent of the disclosure. This factor tends to weigh against a finding of waiver, at least of the work product privilege, for two principal reasons. First, the disclosure here was not to SPG or its lawyers, but to an expert witness for mySimon. This is not a case where the court is being asked to "unring a bell" that has already rung, by asking lawyers for the opposing party to forget, or pretend to forget, a critical document, as was the case in *Draus.* Second, the documents inadvertently provided to the expert witness have essentially nothing to do with the subject matter of her testimony. The court's *in camera* review of the documents has been critical to this determination. If the documents in question had laid out mySimon's counsel's theories on damages issues or had contained factual information that counsel had gathered from witnesses on the issue of damages, the court would have little difficulty concluding that SPG would be entitled to see the documents for the purpose of cross-examining Elsten. See, *e.g., Karn v. Ingersoll–Rand,* 168 F.R.D. at 637–41 (disclosure of documents containing attorney's opinion work product to testifying expert witness waived work product privilege as to those documents; opposing party was entitled to production of documents).

The court is not relying solely on Elsten's statement that she did not "consider" or rely upon the documents in question. In other

cases, at least, such an assertion by an expert witness could become too easy a dodge. The Advisory Committee noted in amending Rule 26(a)(2) in 1993 that "litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." The committee drew no distinction between reviewing a document and considering a document, and neither does this court. Elsten at least "reviewed" the four documents in question. In the case of these four documents, however, there is simply no reason to believe that disclosure to Elsten but not to SPG will impair SPG's ability to cross-examine her effectively. These four documents that mySimon's lawyers did not intend to disclose to her simply have no bearing at all on the issue of damages.

The factors set forth in *Draus* and *Lois Sportswear* have been adopted and applied primarily in the context of inadvertent disclosure to opposing counsel in litigation. As applied to the situation here, inadvertent disclosure to a testifying expert witness, the "fit" between those factors and the issues here is not as close as one might hope.

After reviewing these cases, the Seventh Circuit's discussion of inadvertent waiver of privileges in *Dellwood Farms*, and the Indiana Court of Appeals' opinion in *JWP Zack*, which adopted an "all relevant facts" approach, this court suggests that a more generally applicable statement of the balancing test would focus on the following questions: First, how excusable or inexcusable was the neglect that led to the inadvertent disclosure? Second, is it possible to provide effective relief from the inadvertent disclosure? Third, is there any serious prospect of harm to the interests of the opponent or to the interests of justice if waiver is not found?

The extent to which the neglect was excusable or not is addressed by the first three *Lois Sportswear* factors: the reasonableness of precautions, the time taken to rectify the error, and the scope of discovery. Whether effective relief is possible is addressed by the fourth *Lois Sportswear* factor, the extent of the disclosure. Fairness to the opponent and to the interests of justice is addressed by the fifth *Lois Sportswear* factor, and can address both an opponent's reliance on the inadvertent disclosure, see *In re Recombinant DNA Litigation*, 30 U.S.P.Q.2d at 1907–08 (privileged documents had been used by receiving party in depositions for two weeks before disclosure was discovered), and the integrity of the ultimate fact-finding process.

Framing the issues this way, the court finds for reasons set forth above that there are no material excuses for the neglect that led to the inadvertent disclosure of the documents to Elsten. However, effective relief is possible here because (a) there was no disclosure to opposing counsel and (b) the documents simply had nothing to do with Elsten's testimony. If *in camera* inspection had shown that the documents were relevant to her testimony, the court would have found a waiver of the opinion work-product privilege. SPG would then have been entitled to use the documents to explore in cross-examination the extent to which mySimon's counsel's theories might have shaped Elsten's opinions on damages. But because the documents had nothing to do with Elsten's opinions, honoring the privilege will not work any unfairness to SPG, nor will it undermine the integrity of the fact-finding process at trial.

Accordingly, the court finds that Documents 40, 41, 42, and 44 are protected by the attorney work-product privilege, and that the privilege has not been waived. Also, SPG has not made any showing of undue hardship that would justify disclosure under Fed. R.Civ.P. 26(b)(3). The court does not decide whether the documents are still protected by the attorney-client privilege.[3]

2. *Michael Yang's Daily Journals:* One founder of mySimon was Michael Yang. Yang

---

**3.** See *P.T. Buntin, M.D., P.C. v. Becker,* 727 N.E.2d 734, 741 (Ind.App.2000) (affirming trial court's finding that attorney-client privilege was waived when defendant personally placed privileged documents in file for expert witness to use in preparing for deposition); cf. *United States v.*

was deposed on February 17–18, 2000, in California. During the deposition, he testified about his practice of keeping daily journals that included notes on mySimon business matters, among other topics. Counsel for SPG sought to inspect the journals. A 1998 volume that Yang had with him was available to SPG's counsel to inspect for about an hour, and copies of designated pages were made for SPG's counsel. SPG's counsel demanded an additional opportunity to inspect that volume and an opportunity to inspect and copy additional volumes of Yang's journals covering later time periods. To complicate matters further, a few days after Yang's deposition, mySimon was acquired by CNET. At that time, Yang lost (or gave up) his position on the mySimon board of directors.

At this time, the court does not have jurisdiction over Yang such that it could order production of the remaining volumes of his journal. Yang is not an agent, officer, or director of mySimon, and he resides beyond the reach of this court's subpoena power. The court does, however, order mySimon to request immediately that Yang allow it to copy his journals for the period 1998 to June 2000 for purposes of discovery in this case.

3. *Electronic Mail Discovery:* In separate rulings on plaintiff's initial motion to compel, the court has established an inspection process for the hard drives and other memories of computers used by mySimon and its senior leaders. That process will culminate in defendant supplementing its document production. The court expects that process to address sufficiently the issues raised with respect to electronic mail discovery. To the extent plaintiff seeks additional relief on this topic, that request is denied.

4. *Supplements to Interrogatory Nos. 20 and 21:* Defendant shall supplement its answers to these two interrogatories within ten days after completing the three depositions it contends it needs to provide more complete answers.

5. *Insurance Documents:* Defendant shall produce no later than June 26, 2000, a complete copy of the Hartford insurance policy applicable to the defense of this lawsuit.

6. *Search Engine Agreements and Related Documents:* Plaintiff is entitled to complete production of documents relating to mySimon's relationships with Internet search engines. Plaintiff shall supplement its production no later than the date that it supplements its document production pursuant to this court's order of June 14, 2000, relating to recovery of computer files.

7. *Gomez Advisors and USA Today Contracts:* Plaintiff is entitled to copies of mySimon's written agreements with Gomez Advisors and USA Today and shall produce those documents no later than June 26, 2000. However, the court views these subjects as more tenuously related to the subject matter of this litigation and therefore denies plaintiff's request for production of all documents relating or referring to these contracts.

8. *Board of Directors Documents:* Minutes of the mySimon board of directors meetings and related documents are potentially relevant to this lawsuit. Plaintiff is entitled to complete production of responsive and non-privileged documents. Defendant shall supplement its production of such documents no later than June 26, 2000. Such production shall include documents currently in the custody of law firms that have represented mySimon. However, the court is not resolving at this time SPG's assertion that mySimon has waived the attorney-client privilege with respect to communications between mySimon's board and the company's attorneys.

9. *Hill & Knowlton Memorandum:* Defendant has now produced a document prepared by a public relations firm relating to this litigation. Plaintiff's request for all doc-

---

*American Telephone and Telegraph Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980) (court that applies "strict liability" approach to waiver of attorney client privilege held that disclosure of documents

to third party will not generally suffice to establish waiver of work product privilege in light of different purposes served by the two privileges).

uments referring or relating to that document is denied as not reasonably calculated to lead to admissible evidence.

Plaintiff's request for sanctions and an award of attorneys' fees and costs associated with its motion is denied in view of the mixed results on the motion.

So ordered.