In re Kyrstan GALL, a minor, by and through her natural mother and guardian, Dawn GALL; Dawn Gall; and Gaylen Gall, Plaintiffs,

v.

Timothy JAMISON, M.D., and Jeffrey A. Clemens, M.D., Defendants.

No. 00SA81.

Supreme Court of Colorado, En Banc.

April 8, 2002.

Gaddis, Kin & Herd, P.C., James B. Turner, Colorado Springs, Colorado, Attorneys for Plaintiffs.

Kennedy & Christopher, P.C., John R. Mann, Edward D. Bronfin, Denver, Colorado, Attorneys for Defendant Jeffrey A. Clemens, M.D.

Montgomery, Little & McGrew, P.C., Kevin J. Kuhn, Patrick T. O'Rourke, Denver, Colorado, Attorneys for Defendant Timothy Jamison, M.D.

Campbell, Latiolais & Ruebel, P.C., Jeffrey Clay Ruebel, Robyn E. Berger, Denver,

Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21, we examine whether a written communication from an attorney to a retained testifying expert is discoverable notwithstanding the attorney's claim of work product privilege.

The plaintiffs in the underlying medical malpractice action sought interlocutory review of the trial court's order compelling them to produce correspondence between their counsel and a medical expert that the plaintiffs had designated to testify at trial on the issue of the standard of care. This court issued a rule to show cause why the plaintiffs' request for mandamus relief directed to the trial court should not be granted. We now discharge the rule.

A 1993 amendment to Rule 26 of the Federal Rules of Civil Procedure and a parallel 1995 amendment to its Colorado counterpart mandate full disclosure of the materials considered by an expert witness, even if the materials include attorney work product. The plain language of the amended Rule, the accompanying advisory committee's note, policy considerations, and the weight of authority compel the conclusion that privileged materials lose their privileged status when disclosed to, and considered by, a testifying expert.

## I. FACTS AND PROCEDURAL HISTORY

Kyrstan Gall, a minor, and her parents brought medical malpractice claims against Timothy Jamison, M.D. and Jeffrey A. Clemens, M.D. The Galls retained experts, including Victoria King, M.D., to testify at trial

about alleged breaches of the standards of medical care and the causation of Kyrstan Gall's injuries.[1] Pursuant to C.R.C.P. 30(b)(1), counsel for defendant Dr. Clemens served a notice of deposition duces tecum on Dr. King requesting that she produce "all correspondence to/from plaintiffs' counsel or anyone else relating to this case." The Galls' counsel admits that his letter to Dr. King included a discussion of deposition testimony that he considered important, an assessment of how defendants' actions may have fallen below the standard of care, and citation to medical journals that he deemed relevant. Asserting that such correspondence contained counsel's mental impressions and opinions, and thus was protected from discovery as attorney work product under C.R.C.P. 26(b)(3), the Galls sought a protective order against the production of correspondence from their counsel to Dr. King pursuant to C.R.C.P. 26(c). The defendant physicians argued that any information provided to a testifying expert was discoverable and outside the work product doctrine.

The trial court denied the plaintiffs' motion and ordered them to produce the correspondence. It reasoned that "Defendants are entitled to know whether Dr. King has in any way 'shaped' her testimony in response to impressions communicated by plaintiffs' counsel" so that defendants could adequately impeach Dr. King. Accordingly, the trial court determined that counsel's communications to the doctor were neither privileged nor work product. We uphold that order.

## II. ANALYSIS

The Federal Rules of Civil Procedure were revised in 1993. The Colorado Rules of Civil Procedure were amended in 1995 to pattern the federal analogue.[2] Because there is no

---

1. Defendant Jamison notes that Dr. King may also be called as a fact witness in this case because one of Kyrstan Gall's treating physicians contacted Dr. King shortly after Gall's injuries occurred. This possibility does not affect our analysis here. At issue here are counsel's communications with her in her capacity as a retained expert witness.

2. Although the federal and state rules are substantially similar, there are a few notable differ-

ences. Two are relevant here. First, the Colorado rule distinguishes between experts retained to provide expert testimony at trial and occupational experts, such as treating physicians, police officers, or others who might testify as experts but whose opinions are formed as part of their normal occupational duties. *Compare* C.R.C.P. 26(a)(2)(B)(I) *with* C.R.C.P. 26(a)(2)(B)(II). Experts specially retained to provide expert testimony must provide a complete statement of all

relevant distinction between the federal and state rules for our purposes, we consider both versions together and refer to them collectively as "the Rules." Rule 26, with which we are concerned in this case, was revised in both the federal and state versions. As relevant here, Rule 26(b)(4), which deals specifically with expert witnesses, was extensively modified. Additionally, Rule 26(a)(2), which governs disclosure of expert testimony and makes mandatory certain pre-trial disclosures of expert testimony, was added.

The new Rule 26(a)(2) requires a testifying expert specially retained for trial to produce before trial a written report or summary of her testimony which includes "a complete statement of all opinions to be expressed and the basis and reasons therefor [and] the data or other information considered by the witness in forming the opinions." C.R.C.P. 26(a)(2)(B)(I); Fed.R.Civ.P. 26(a)(2)(B). The amended Rule 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." These changes represent a "striking departure" from the prior approach.[3] *Karn v. Rand,* 168 F.R.D. 633, 638 (N.D.Ind.1996). As amended, Rule 26(b)(4) eliminates the need for interrogatories to determine the substance of the testimony that an expert would give at trial.

*B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of New York, Inc.,* 171 F.R.D. 57, 65 (S.D.N.Y.1997). The scope of discovery changed dramatically by requiring an expert to disclose material "considered" by her, not just "facts known" and "opinions held" by her, as the old rule required. *Id.*

The rule of disclosure embodied in Rule 26(a)(2) shares an uneasy coexistence with the attorney work product doctrine developed by the United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and codified in Rule 26(b)(3) of the federal and state rules of civil procedure. Established to protect the adversary system, the work product privilege safeguards from disclosure during discovery "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3); C.R.C.P. 26(b)(3); *Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385. Accordingly, Rule 26(b)(3) generally subjects to discovery documents and tangible things prepared in anticipation of litigation only if the opposing party demonstrates a "substantial need" for the materials and cannot obtain the substantial equivalent without undue hardship. Even where a party makes a showing of substantial need and inability to obtain equivalent materials from other sources, Rule 26(b)(3) requires the

opinions and the basis and reasons therefor, including all information considered in forming that opinion. With respect to occupational experts, on the other hand, disclosure is more limited. This class of witnesses must submit a report or summary including a complete statement setting forth the substance of and bases for their opinions. Because Dr. King was retained by Plaintiffs to testify as an expert witness, we consider only C.R.C.P. 26(a)(2)(B)(I). Second, Colorado Rule 26(b)(5), which requires parties to provide privilege logs when they withhold documents on the basis of privilege, differs from the similar federal provision codified in Fed.R.Civ.P. 26(b)(5) by establishing that parties must expressly claim and specifically describe allegedly privileged materials both in response to discovery requests and in making the disclosures required under 26(a). The Federal Rule's more ambiguous language applies to materials "otherwise discoverable" and does not specify that the Rule applies to documents covered by the automatic disclosure provision. *See* Committee Comment to C.R.C.P. 26 (stating that "claiming privilege/protection of work product ... are relocated in the State Rules to clarify that they apply both

to disclosure and discovery"). In spite of Plaintiffs' contentions to the contrary, this subsection of the rule is inapplicable here because, as we explain *infra,* an attorney waives any work product protection when she shares otherwise privileged materials with a testifying expert witness.

**3.** Before it was amended, Rule 26(b)(4) read, in relevant part:

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows: (A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

Fed. R. Civ. P. 26(b)(4)(1992)(amended 1993).

court to protect against the disclosure of the attorney's mental impressions, opinions, and theories.

The general protection from discovery that Rule 26(b)(3) affords work product, however, is tempered by the provisions of Rule 26(b)(4), to which Rule 26(b)(3) is subject. As noted above, amended Rule 26(b)(4) permits an opposing party to depose an expert witness retained by the adverse party when the expert is expected to testify at trial.

The potential conflict in Rule 26—between subsections 26(a)(2) and 26(b)(3)—becomes real when an attorney shares her mental impressions or legal theories with a testifying expert and when an adverse party seeks discovery of all of the information considered by an expert in forming her opinion under Rules 26(a)(2)(B) and 26(b)(4)(A). *Fed. Deposit Ins. Corp. v. First Heights Bank, FSB,* No. 95-CV-72722-DT, 1998 U.S. Dist. LEXIS 21506, at *3 (E.D.Mich. March 3, 1998), aff'd. in part and rev'd in part on other grounds, 229 F.3d 528 (6th Cir.2000); *Barna v. United States,* No. 95C6552, 1997 U.S. Dist. LEXIS 10853 (N.D.Ill. July 18, 1997). The question becomes whether the liberal discovery provided to parties relating to expert testimony should trump the strong protections afforded an attorney's work product. *Barna,* 1997 U.S. Dist LEXIS 10853 at *3. This conflict has led to a clear split of opinion among courts considering whether the work product privilege is waived by disclosure of the documents to a retained expert witness.

The conflict inherent in amended Rule 26, at the heart of this dispute, is nothing new. The 1993 amendments were intended, in part, to resolve a precursor disagreement that afflicted the Rule in its pre-amendment days. The current dispute over the meaning and scope of amended Rule 26 is an outgrowth of that conflict. Although the cases attempting to resolve the earlier tension in Rule 26 may be obsolete in the wake of the amendments, courts continue to rely on their reasoning to inform their analyses and constructions of amended Rule 26. Thus, in order to understand how the amendments affect discoverability of the documents at issue here and how various courts have dealt with the post 1993 conflict, we consider how courts treated the similar but more thorny pre 1993 discord between the subsections of Rule 26.

Before 1993, Rule 26(b) alone governed expert witnesses. At that time, Rule 26(b)(4) allowed a party to serve interrogatories requiring an adverse party to identify experts and "state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." Fed.R.Civ.P. 26(b)(4)(1992)(amended 1993); C.R.C.P. 26(b)(4), 8A C.R.S. (1994)(amended 1995). The ambiguous language of the rule, when read together with Rule 26(b)(3), which codified the work product doctrine, created much uncertainty about the discoverability of opinion work product when reviewed by a testifying expert.

Courts attempting to reconcile this conflict generally subscribed to one of two predominant schools of thought. The first approach, described by some commentators and courts as the "protection oriented approach," permitted discovery of work product only upon a showing of substantial need. *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 594–95 (3d Cir.1984); *see also Lamonds v. Gen. Motors Corp.,* 180 F.R.D. 302, 305 (W.D.Va.1998) (describing the competing approaches); Michael E. Plunkett, Comment, *Discoverability of Attorney Work Product Reviewed by Expert Witnesses: Have the 1993 Revisions to the Federal Rules of Civil Procedure Changed Anything?,* 69 Temp. L. Rev. 451 (1996). Federal courts in Colorado followed the second, "discovery oriented approach," which allowed wide discovery of work product materials a lawyer had given to an expert. *Boring v. Keller,* 97 F.R.D. 404, 407–08 (D.Colo.1983); *see also Lamonds,* 180 F.R.D. at 305; *B.C.F.,* 171 F.R.D. at 64–65.

*Boring v. Keller,* a medical malpractice action, is the leading pre-amendment case championing broad discovery of work product shared with an expert. In *Boring,* defendant's counsel had provided the expert witnesses with a letter containing general suggestions for the experts and counsel's opinions about issues generally encountered in medical malpractice cases. 97 F.R.D. at 405. The defendant's experts used those

materials to prepare their opinions. Plaintiffs sought discovery of the documents; the defendant objected on the grounds that the letter constituted work product. *Id.*

Judge Kane held that work product shared with a testifying expert was discoverable under Fed.R.Civ.P. 26(b)(4). *Id.* at 408. He concluded that "the opinion work product rule is no exception to discovery under circumstances where documents contain mental impressions and are examined and reviewed by expert witnesses before their expert opinions are formed." *Id.* at 406. His rationale was two-fold. First, the work product privilege is waived when otherwise protected materials are used to influence and shape testimony. Second, materials and information shared with a retained expert will affect her credibility. Judge Kane concluded that the adverse party must be permitted to inspect the shared documents in order to effectively cross-examine the expert witness on the degree to which her opinion was informed by the retaining counsel's disclosure of limited facts, highlighting of particular facts, or emphasis on certain studies and scholarly literature. *Id.* at 407–08.

*Boring's* holding and rationale were adopted by Judge Finesilver in *In re Air Crash Disaster*, 720 F.Supp. 1442 (D.Colo. 1988) and by Judge Babcock in *U.S. Energy Corp. v. NUKEM, Inc.*, 163 F.R.D. 344 (D.Colo.1995). Thus, even before the 1993 amendments, the well-established rule in Colorado federal courts allowed for the discovery of work product materials furnished to retained experts.

Although the precedent in Colorado federal courts was clear, the lack of uniformity among jurisdictions throughout the country that construed Rule 26, and the confusion it engendered, prompted Congress to amend the Federal Rules in 1993. In modifying the rules governing discovery, including Rule 26, Congress aimed to expedite the exchange of information between litigants and reduce the volume of paperwork. Further, the Federal Rules advisory committee's exploration of ways to enhance expert reliability was driven by concern about the trustworthiness of expert witnesses. *See* Fed.R.Civ.P. 26 advisory committee's note (discussing alternative ways to assess the reliability of expert testimony); *see also* Plunkett, *supra,* at 468 & n. 148. Accordingly, it added Rule 26(a)(2), obligating parties to disclose the names, qualifications, and opinions of expert witnesses. As noted above, an expert witness now must furnish to the opposing party a written report that includes, inter alia, a "complete statement of all opinions to be expressed and the basis and reasons therefor; the date or other information considered by the witness in forming the opinions."

Most significantly, the advisory committee criticized the practice of shielding from discovery work product given by attorneys to experts. It concluded that claims of work product protection should not thwart discovery of materials provided to an expert witness, stating that in light of the "obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Fed. R.Civ.P. 26 advisory committee's note.[4]

---

4. The note reads, in relevant part:
   This paragraph [Rule 26(a)(2) ] imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.... The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for the deposition of the witness....

The [expert] report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions whether or not ultimately relied upon by the expert are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.
Fed.R.Civ.P. 26(a)(2) advisory committee's note (1993 amendment).

With the adoption of the 1993 amendments, most jurisdictions considered the tension in Rule 26 to be resolved in favor of full discovery of attorney work product.[5] Thus, the weight of authority, and the more persuasive opinions, have held that disclosure of work product to a testifying expert waives the work product privilege. *See, e.g., Weil v. Long Island Sav. Bank, FSB,* No. CV–94–1292, 206 F.R.D. 38, 2001 U.S. Dist LEXIS 22915, at *10–11 (E.D.N.Y. Oct. 11, 2001); *Simon Prop. Group v. mySimon, Inc.,* 194 F.R.D. 644 (S.D.Ind.2000); *Lamonds,* 180 F.R.D. at 305–06; *Musselman v. Phillips,* 176 F.R.D. 194, 199–202 (D.Md.1997); *B.C.F.,* 171 F.R.D. at 64–67; *Barna,* 1997 U.S. Dist. LEXIS 10853, at *2–3; *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.,* 168 F.R.D. 61, 62 (D. New Mex.1996); *Karn,* 168 F.R.D. at 648–39. The rationale for holding that Rule 26(a)(2) mandates disclosure despite privilege is grounded in the text of the new Rule, the advisory committee's note, and public policy factors.

Nevertheless, a small minority of jurisdictions has continued to extend protection to all attorney work product even when it is disclosed to a testifying expert. These cases rely on language in *Hickman* and the longstanding history of protecting work product. *See, e.g., Nexxus Prods. Co. v. CVS New York, Inc.,* 188 F.R.D. 7, 9–11 (D.Mass.1999); *Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 642–43 (E.D.N.Y.1997); *Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 289, 294–96 (W.D.Mich.1995); *All W. Pet Supply Co. v. Hill's Pet Prods. Div., Colgate–Palmolive Co.,* 152 F.R.D. 634, 638–39 (D.Kan.1993).

In *Haworth,* the leading case espousing the minority view, the district court concluded that the new amendments were intended to require disclosure of only the factual materials informing an expert's opinion; opinion work product was, in its view, still protected from discovery. 162 F.R.D. at 294; *see also All W. Pet Supply,* 152 F.R.D. at 638–39 (stating that the amended rule required "only

that the data or information, i.e., the facts, considered by the expert must be disclosed notwithstanding the assertion of work product"). The *Haworth* court considered the language of the amended statute insufficiently clear, and the policy of effective cross-examination inadequate, to warrant overriding *Hickman* in the area of expert witnesses testimony. 162 F.R.D. at 295.

*Haworth* and its progeny thus maintain that opinion work product does not lose its protected status simply because it is disseminated to an expert. *See All W. Pet Supply,* 152 F.R.D. at 638; *Magee,* 172 F.R.D. at 643. Accordingly, these cases construe Rule 26 as effecting no change from the status quo ante.

■ We disagree. In our view, the reading urged by Plaintiffs and supported by a minority of jurisdictions is incompatible with the clear import of the amended Rules, and is inconsistent with the intent of the drafters of the 1993 and 1995 amendments. The minority interpretation of the advisory committee's note promulgated by the *Haworth* court renders the 1993 amendments to Rule 26 superfluous. As the *Barna* court explained, in cases decided before the 1993 amendments, courts routinely held that facts and factual data contained in work product were discoverable. 1997 U.S. Dist. LEXIS 10853, at *6–7. Even where pre 1993 courts shielded opinion work product from discovery, they required disclosure of the facts provided to that same expert. *Id.* Moreover, the work product doctrine safeguards only an attorney's opinion of the facts, not the facts themselves. *Hickman,* 329 U.S. at 507–08, 67 S.Ct. 385 (noting that all facts are discoverable; only work product is protected); *see also* Plunkett, *supra,* at 479 & n. 299.

The new Rule 26(a)(2) explicitly states that an expert must disclose the basis for her opinion before she is deposed. The language in Rule 26(b)(3) concerning protection of opinion work product is "subject to" Rule 26(b)(4), indicating that the work product doctrine does not protect the materials in-

---

5. Because no Colorado cases address whether expert communications fall within the ambit of the work product doctrine, the federal cases construing the identical language of Fed.R.Civ.P. 26(b)(3) and Fed.R.Civ.P. 26(b)(4) are persuasive although not binding on this court. *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 977–78 (Colo.1999).

forming the expert's report or opinion. *Suskind v. Home Depot Corp.*, No. 99–10575–NG, 2001 WL 92183 at *3–4, 2001 U.S. Dist. LEXIS 1349, at *9–10 (D.Mass. Jan. 2, 2001) (concluding that Rule 26(b)(4) clearly trumps Rule 26(b)(3) with respect to materials discoverable concerning expert testimony). Moreover, the advisory committee's commentary indicates that it resolved the conflict left open in the prior formulation of Rule 26. According to the United States Supreme Court, the advisory committee's construction of the Federal Rules of Civil Procedure is "of weight" and should be given due deference when interpreting the rules. *Johnson v. Gmeinder* 191 F.R.D. 638, 646 (D.Kan.2000) (citing *Schiavone v. Fortune*, 477 U.S. 21, 30–31, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986)).

▇ The unambiguous language of the commentary compels the conclusion that opinion work product that is reviewed or considered by an expert in preparation for testimony at trial is discoverable under Rules 26(a)(2)(B) and 26(b)(4)(A). We note that the advisory committee's commentary generally makes no distinction between types of privileged or protected materials and specifically fails to accord special protection for opinion rather than fact work product. Accordingly, cases construing the amendment and the advisory committee's note have held that the amended rule "unambiguously provide[s] a bright-line rule in favor of production of *any information* which the expert considers." *Id.* (quoting *B.C.F.*, 171 F.R.D. at 66; emphasis added in *Johnson*). Most commentators have reached a similar conclusion. *See, e.g.*, 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2016.2, at 252 (1994) ("With respect to experts who testify at trial, the disclosure requirements of Rule 26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege."); Lee Mickus, *Discovery of Work Product Disclosed to a Testifying Expert Under the 1993 Amendments to the Federal Rules of Civil Procedure*, 27 Creighton L. Rev. 773, 808 (1994).

Strong public policy considerations support a construction of Rule 26(a)(2) favoring broad disclosure. A bright-line rule promotes effi-ciency, fairness, and the truth seeking process. Requiring trial courts to review every expert communication in camera to determine the appropriate degree of disclosure, on the other hand, simply foments needless discovery battles, undercuts the truth seeking principles of the rules of civil procedure, and wastes scarce judicial resources.

A bright-line rule preserves judicial economy by obviating the need for a judge to consider whether counsel's communications to retained experts contain work product. It also frees trial courts from the burdensome task of sifting through volumes of documents to separate "factual work product" from "opinion work product"—a compromise approach struck by some jurisdictions. *See, e.g., Rail Intermodal Specialists v. Gen. Elec.*, 154 F.R.D. 218 (N.D.Iowa 1994) (reviewing documents in camera before denying discovery, in part, because the factual information was available through other sources); *Dominguez v. Syntex Labs., Inc.*, 149 F.R.D. 158, 165 (S.D.Ind.1993) (ordering the redaction of opinion work product).

A bright-line approach also gives parties notice of precisely which materials will be discoverable in every case, thereby reducing the number of discovery disputes. "Without a clear and uniform rule to indicate the consequences of disclosure, the litigator must repeatedly face the frustrating decision whether to disclose protected documents to the expert, and ultimately he must choose either to gamble that the court will not order discovery of work product documents disclosed to the expert or to play it safe and forego the benefits of disclosure." Mickus, *supra*, at 774–75. Thus, the adoption of a bright-line rule "actually preserves opinion work product in that there is no lingering uncertainty as to what documents will be disclosed. Counsel can easily protect genuine work product by simply not divulging it to the expert." *Karn*, 168 F.R.D. at 641. Concomitantly, a bright-line rule promotes fairness among litigants by subjecting all parties who retain experts to the same disclosure requirements.

Perhaps most importantly, a bright-line disclosure rule advances the truth seeking function of the discovery rules. This court

has emphasized the primacy of this objective in the discovery context, holding that the Colorado Rules of Civil Procedure are to be liberally construed to effectuate their truth seeking purpose. *Hawkins v. Dist. Court,* 638 P.2d 1372, 1375 (Colo.1982).

If an adverse party is to determine the extent to which the expert's opinion has been shaped or influenced by the version of the facts selected and presented by the counsel retaining the expert, she must have access to the documents or materials that the expert considers. Without such access, the opposing party will be unable to conduct a full and fair cross-examination of the expert. *Simon Prop. Group,* 194 F.R.D. at 647 (stating that "under Rule 26, an attorney should not be permitted to give a testifying expert witness a detailed 'road-map' for the desired testimony without also giving the opposing party an opportunity to discover that 'map' and to cross-examine the expert about its effect on the expert's opinions in the case"); *Lamonds,* 180 F.R.D. at 306 ("Because experts are often less than helpful and sometimes misleading, effective cross-examination by an opposing party is an essential tool for exposing any weaknesses in the expert's opinions."); *Occulto v. Adamar of New Jersey,* 125 F.R.D. 611, 616–17 (D.N.J.1989) (observing that the need for effective cross-examination implicates the integrity of the truth finding process because "an expert who can be shown to have adopted the attorney's opinion as his own stands less tall before the jury than an expert who has engaged in painstaking inquiry and analysis before arriving at an opinion").

A bright-line rule's promotion of the truth seeking function of discovery does not compromise the strong policies underlying the work product doctrine. The work product doctrine is intended to permit an attorney to prepare her case by distinguishing relevant from irrelevant facts, testing novel legal theories, and deliberating over tactics and strategy. *Barna,* 1997 U.S. Dist LEXIS 10853, at *9. These objectives are not undermined by a bright-line rule because divulging opinion work product to a testifying expert "does not result in counsel developing new legal theories or in enhancing the conducting of a factual investigation. Rather, the work product either informs the expert as to what counsel believes are relevant facts, or seeks to influence him to render a favorable opinion." *Karn,* 168 F.R.D. at 640.

Moreover, Rule 26(b)(4)(B) provides that an attorney may consult on a confidential basis with as many non-testifying experts as she deems necessary to develop legal theories and to test their scientific viability. When she does so, the attorney is "free to think dispassionately, reliably, and creatively both about the law and the evidence in the case and about which strategic approaches are likely to be in [her] client's best interests." *Intermedics, Inc. v. Ventritex, Inc.,* 139 F.R.D. 384, 392 (N.D.Cal.1991) (making this point under the pre 1993 Rules). Additionally, "[a]n attorney wishing to maintain the protection afforded by the work product doctrine can choose to provide the expert with all relevant facts instead of directing the expert's attention to certain facts and instead of including opinions and conclusions drawn by the attorney." *Lamonds,* 180 F.R.D. at 306. Accordingly, "[a]dvance warning that material provided to an expert is discoverable allows the attorney to continue unfettered preparation of the case while practicing caution regarding communications with the expert." *FDIC,* 1998 U.S. Dist LEXIS 21506, at *14; *see also Weil,* 206 F.R.D. 38, ——, 2001 U.S. Dist LEXIS 22915, at *15.

For these reasons, we hold that the Rule allows discovery of attorney work product shared with a testifying expert witness, provided the expert witness considers the work product in forming an opinion.

■ We emphasize that a communication is discoverable even if the expert did not rely on it in forming her opinion; she need only consider the communication in developing her opinion. *Accord Karn,* 168 F.R.D. at 635 (noting that the term "considered" "clearly invokes a broader spectrum of thought than the phrase 'relied upon,' which requires dependence on the information" and holding that documents were "considered" where testifying experts reviewed them even if the experts did not rely on the materials in forming their opinions); *see also Johnson,* 191

F.R.D. at 647; *Musselman,* 176 F.R.D. at 202. Notably, the drafters of the 1993 amendments to Rule 26 rejected a version of subsection 26(a)(2) that would have required the expert's report to identify all data or information "relied upon" by the expert in forming her opinions. *See* August 1991 Proposed Rules, 137 F.R.D. 53, 89 (1991). As one scholar has commented, "[t]he drafters' choice of the more expansive term 'considered' rather than the narrow term 'relied' indicates an intent to expand the scope of exchanged information." Plunkett, *supra,* at 478.

The amended Rule and the advisory committee's note both decline to delineate the term "considered," and courts have grappled with how define its contours. The *Karn* court held that the term means that an expert "tak[es] [the document or material] into account," or "review[s] the documents in connection with forming their opinions." 168 F.R.D. at 635. The *Lamonds* court held that a document is considered for purposes of 26(a)(2) if the expert receives and reads the document before formulating her expert opinion. 180 F.R.D. at 306. Similarly, the court in *Baxter Diagnostics, Inc. v. AVL Scientific Corp.* held that documents are considered when an expert reviews them in connection with forming her opinion, even if she does not rely upon or ultimately rejects the material. No. CV–91–4178–RG (Ex), 1993 WL 360674 at *1, 1993 U.S. Dist LEXIS 11798, at *1 (C.D.Cal. Aug. 6, 1993). As the federal district court in Kansas recently noted, "documents considered but rejected by the testifying expert in reaching opinions may be equally necessary for effective cross-examination.... In fact, the documents considered but rejected by the expert trial witness could be even more important for cross-examination than those actually relied upon by him." *W. Res., Inc., v. Union Pac. R.R.,* No. 00–2043–CM, 2002 WL 181494 at *9 n. 13, 2002 U.S. Dist. LEXIS 1911, at *32 n. 13 (D.Kan. Jan. 31, 2002)(internal quotations marks omitted).

■ In the same vein, the *Johnson* court recently held that where an expert has "read or reviewed the privileged materials before or in connection with formulating his or her opinion, the expert will be deemed to have 'considered' those materials for purposes of Rule 26(a)(2)(B)." 191 F.R.D. at 649. We agree with the thrust of these definitions and adopt a variant of the District of Kansas's formulation in *Johnson.* We hold that an expert considers documents or materials for the purposes of Rule 26(a)(2)(B) where she reads or reviews them before or in connection with forming her opinion, even if she does not rely upon or ultimately rejects the documents or materials.

Accordingly, in this case, the plaintiffs must comply with the trial court's order and produce the requested materials, provided that Dr. King considered them.

### III.

In sum, the plain language of amended Rule 26, the advisory committee's note, policy considerations, and the weight of authority support this court's conclusion that attorney work product materials lose their privileged status when disclosed to, and considered by, a testifying expert. Accordingly, we discharge the rule.